RAY LIVINGSTON JONES v. MATT GWYNNE, CHRISTAL NEWTON, RAMONA GALARZA AND McDONALD'S CORPORATION

No. 8212SC1086

(Filed 20 September 1983)

1. **Malicious Prosecution § 11.1— indictments after action filed as evidence of probable cause**

   In an action for malicious prosecution of embezzlement charges, two judges of the three-judge panel of the Court of Appeals were of the opinion that the trial court erred in instructing the jury that it could not consider the grand jury's return of embezzlement indictments against defendant as evidence of probable cause since the indictments were returned after plaintiff's action was filed. However, such instruction did not require reversal because one judge was of the opinion that the instruction was not erroneous and a second judge was of the opinion that the error was not prejudicial.

2. **Malicious Prosecution § 15— punitive damages—insufficient evidence of actual malice**

   In an action for malicious prosecution of embezzlement charges, evidence of comments made by the individual defendant to plaintiff at a softball game in which they were both participating and evidence of the individual defendant's conduct of the investigation into defendant's alleged embezzlement of money

---

Jones v. Gwynne

---

from a fast food restaurant was insufficient to show actual malice by the individual defendant which would support an award of punitive damages. Therefore, the corporate defendant cannot be said to have acted out of actual malice based on the acts of the individual defendant.

**3. Malicious Prosecution § 15— punitive damages—insufficient evidence of reckless disregard of plaintiff's rights**

In a malicious prosecution action, plaintiff failed to show that defendants instituted a prosecution against plaintiff for embezzlement in reckless and wanton disregard of plaintiff's rights so as to warrant an award of punitive damages where the evidence showed that the individual defendant interviewed witnesses who claimed to have seen defendant take money from the corporate defendant's cash register, that he examined records indicating large numbers of "no-sales," and that he consulted with the police and his superiors before instituting proceedings against plaintiff.

Judge HILL concurring in the result.

Judge WEBB dissenting in part and concurring in part.

APPEAL by defendants, Matt Gwynne and McDonald's Corporation, from *Herring, Judge.* Judgment entered 25 January 1982 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 1 September 1983.

This is a civil action for malicious prosecution. Evidence presented at trial tended to show the following. On 9 May 1979 Ramona Galarza, a cashier at McDonald's Restaurant, told the second assistant manager, Sheila Stewart, that she had seen Ray Jones, the plaintiff, take money from customers and deposit it in the cash register without reporting the sale on the cash register. Galarza said the plaintiff did this by ringing "no sale" instead of the purchase amount on the register. Sheila Stewart reported this to the first assistant manager, Steve Winstead, and to the Fayetteville Area Supervisor, Paul Craddock who in turn called his supervisor, J. D. Bell, and McDonald's Regional Security Manager, Matt Gwynne.

On 16 May 1979 Gwynne and Craddock conferred with Detectives Post and Kraus of the Fayetteville Police Department and requested assistance in the investigation. Craddock and Gwynne then took written statements from three McDonald's cashiers, Ramona Galarza, Christal Newton and Stephanie Williams, who said they had seen Jones take money from customers and ring up "no sales." Gwynne and Craddock did not take statements from

two other McDonald's employees, Pam Lawson and Hazel Bido, who testified that they had never seen Jones take money without recording the sale in the cash register. During their investigation Craddock and Gwynne reviewed the store records and register tapes and found a number of "no sales" on the register tapes from the days Jones was managing the restaurant. On 18 May 1979 Detectives Post and Kraus went to McDonald's and observed Jones at work for about an hour. They saw nothing unusual, and they reported this to Gwynne and Craddock. Gwynne, Craddock, Kraus and Post returned to McDonald's on 18 May 1979 where they arrested Jones and took him to the Fayetteville Law Enforcement Center for questioning. He cooperated fully with the police and denied embezzling any money from McDonald's.

After questioning Jones, Detective Post again conferred with Gwynne and Craddock. According to his testimony at trial, he told them that Jones denied any wrongdoing and that ". . . if we were going to act, we would have to act on whatever we have, and that we had enough probable cause to go to court already." Detective Post then spoke with Assistant District Attorney Michael Winesette. Winesette testified at trial regarding their conversation:

> I did not tell him [Post] he had real problems with the case. Based on what he told me, I told him it sounded like he had a good case, but that he needed evidence of the conversion of the money. That is one of the elements of the case. I told them they needed more evidence. I don't know if those were the exact words, but basically I told him that he should try to get as much evidence as he could on the fourth element.

Detective Post informed Gwynne of his conversation with Winesette. After discussing the matter with his superiors, Gwynne told Post that McDonald's wanted to prosecute Jones. Warrants were then taken out against Jones charging him with embezzlement of $1.50 on or about 15 May 1979 and "an indeterminant amount" [sic] on or about 14 April 1979.

On 26 June 1979 the assistant district attorney took voluntary dismissals on both charges. Plaintiff filed the present action three days later. After this action was filed but prior to trial, the grand jury indicted the plaintiff on three counts of embezzlement from McDonald's Restaurant. Plaintiff was tried on these charges

in February, 1980. After hearing the State's evidence on one of the charges, the trial judge dismissed the case and the assistant district attorney took voluntary dismissals as to the remaining charges.

The present action came to trial in January, 1982. At the close of plaintiff's evidence motions of defendants Christal Newton and Ramona Galarza for a directed verdict were allowed. The motions of defendants Matt Gwynne and McDonald's Corporation for a directed verdict were denied. The following issues were submitted to and answered by the jury as indicated:

1. Did the Defendant, Matt Gwynne, maliciously prosecute criminal charges of embezzlement, issued on May 18, 1979, against the Plaintiff, Ray Jones?

Answer: Yes.

2. Did the Defendant, McDonald's Corporation, maliciously prosecute criminal charges of embezzlement, issued on May 18, 1979, against the Plaintiff, Ray Jones?

Answer: Yes.

3. If so, what amount, if any, is the Plaintiff, Ray Jones, entitled to recover for actual damages?

Answer: $200,000.

4. What amount of punitive damages, if any, should be awarded to the Plaintiff, Ray Jones?

Answer: $100,000.

From a judgment entered on the verdict, defendants appealed.

*Teague, Campbell, Conely & Dennis, by G. Woodrow Teague and Dayle A. Flammia, and Smith, Dickey & Parish, by W. Ritchie Smith, Jr. for the plaintiff, appellee.*

*Hunton & Williams, by Odes L. Stroupe, Jr. and David Dreifus for defendants, appellants.*

HEDRICK, Judge.

In order to succeed in an action for malicious prosecution, the plaintiff must show "that defendant initiated the earlier pro-

ceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in plaintiff's favor." *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E. 2d 611, 625 (1979). The defendants argue that the trial court erred by excluding evidence of probable cause. They contend the court erred by (1) instructing the jury that it could not consider the grand jury indictments of Jones as evidence of probable cause, (2) excluding Matt Gwynne's testimony that he had been told the assistant district attorney believed probable cause existed to prosecute Jones and (3) refusing to admit into evidence the warrants issued for Ray Jones' arrest.

[1] Defendant first assigns error to the court's charge to the jury that "you may not consider the evidence of the return by the Grand Jury of the bills of indictment as true bills on this question [of probable cause] because it occurred after the filing of this action." Defendants assert that "[t]he three grand jury indictments of Ray Jones on August 13, 1979 are prima facie evidence that probable cause existed for Jones' arrest and prosecution."

Defendants are correct in their contention that a bill of indictment has been characterized by our Supreme Court as "prima facie evidence" of probable cause in cases involving malicious prosecution. *Young v. Hardwood Co.*, 200 N.C. 310, 312, 156 S.E. 501, 502 (1931); *Kelly v. Shoe Co.*, 190 N.C. 406, 410, 130 S.E. 32, 35 (1925); *Stanford v. Grocery Co.*, 143 N.C. 419, 426, 55 S.E. 815, 817 (1906). In discussing this rule, Prosser notes:

> [W]here the accused is committed or held to bail by a magistrate, or indicted by the grand jury, it is evidence that there was probable cause for the prosecution. It is very often said that this establishes a "prima facie" case; but since the plaintiff has the burden of proving lack of probable cause in any case, and is free to do so, this apparently means nothing more than that the commitment is important evidence on the issue.

W. Prosser, Handbook of the Law of Torts Sec. 119, at 846 (4th ed. 1971). While competent, evidence of indictment by a grand jury is not conclusive on the issue of probable cause; it is to be considered by the jury along with all the other evidence in the case. *Mitchem v. Weaving Co.*, 210 N.C. 732, 735, 188 S.E. 329, 330

(1936); *Young v. Hardwood Co.*, 200 N.C. 310, 312, 156 S.E. 501, 502 (1931).

While the general rules governing the admissibility of grand jury indictments in malicious prosecution cases are clear, it is true, as defendants concede in their memorandum of additional authority, that "[t]he factual situation in this case has never been ruled upon by a North Carolina appellate court." In this case, the indictments defendants sought to introduce were issued after the present action for malicious prosecution was commenced. Plaintiff in the present case based his complaint not on the indictments, but rather on the arrest warrants issued months before. When the district attorney took a voluntary dismissal on the warrants, the criminal proceedings against Jones terminated for the purpose of this action, and the tort was complete. *Taylor v. Hodge*, 229 N.C. 558, 50 S.E. 2d 307 (1948); *Perry v. Hurdle*, 229 N.C. 216, 49 S.E. 2d 400 (1948). *See also* W. Prosser, Handbook of the Law of Torts Sec. 119, at 839 (4th ed. 1971). While we could avoid deciding the question by agreeing with plaintiff that the challenged instruction, if error, was not prejudicial, we choose to be more definitive and declare that the better rule in such a case bars consideration of later indictments on the issue of probable cause. We note that the inquiry into probable cause seeks to establish whether there existed "such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution." *Pitts v. Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E. 2d 375, 379 (1978) (citation omitted). We do not believe that a grand jury determination of the existence of probable cause, issued after the alleged tort is complete and the complaint filed, is relevant to this inquiry. We thus hold that the trial judge did not err in giving the challenged instructions.

Defendants also contend that Gwynne should have been allowed to testify that "he knew, before warrants were sworn out against Jones, that Assistant District Attorney Winesette believed probable cause existed to prosecute Jones." We do not believe defendants were prejudiced by the exclusion of this testimony. Mr. Winesette testified that he told Detective Post that Post had "a pretty good case" but needed evidence of the conversion of money to make a case of embezzlement. Also, the following testimony by Gwynne, allowed into evidence, indicated Gwynne's awareness of Post's conversation with Winesette:

MR. JOHNSON [defendant's attorney]: What, if any, conversation did you have with Detective Post about contacting the District Attorney's Office?

A. I asked him, let's contact the District Attorney's office and discuss the case with them. And at that point Detective Post called the District Attorney's Office and talked with a District Attorney about the case. He was on the telephone for ten or fifteen minutes, I suppose. And following the telephone conversation, he came back in the room . . . and told me that he had talked with the District Attorney's Office. . . .

. . .

MR. JOHNSON: After Detective Post contacted the District Attorney's Office, did he advise you of the District Attorney's response—yes or no?

GWYNNE: Yes. He did.

Detective Post also testified:

I talked to the District Attorney staff and explained to them exactly what I had, what the evidence tended to show and what testimony would appear to be from the employer's standpoint. . . . We felt that we had plenty to go on as far as the charges, or I wouldn't have signed a warrant.

The substance of the conversation between Post and Winesette and Gwynne's knowledge of that conversation were allowed into evidence. Therefore, the exclusion of Gwynne's statement that Detective Post told him the assistant district attorney thought there was probable cause in no way prejudiced the defendants.

We also find no error in the court's exclusion of the two warrants issued for Jones' arrest on 18 May 1979. Both arrest warrants were identified at trial and read into evidence by Lloyd Clifford Brisson, an assistant district attorney. Furthermore, Brisson explained the notations, "V-O-L" "D-I-S" "to go to GJ," which he had made on the shucks containing the warrants. He testified the notations meant he had taken a voluntary dismissal and the cases would go to the grand jury. The judge also instructed the jury it could consider the warrants relevant to the

issue of probable cause. This assignment of error is overruled.

The defendants next contend that "the issue of punitive damages should not have been submitted to the jury because there was insufficient evidence as a matter of law to justify an award of punitive damages." The rule governing recovery of punitive damages in an action for malicious prosecution is as follows:

> . . . legal malice, which must be present to support an action for malicious prosecution, may be inferred by the jury from the want of probable cause, and . . . it is sufficient as a basis for the recovery of compensatory damages, but . . . when punitive damages are claimed, the plaintiff must go further and offer evidence tending to prove that the wrongful act of instituting the prosecution was done from actual malice in the sense of personal ill-will, or under circumstances of insult, rudeness or oppression, or in a manner which showed the reckless and wanton disregard of the plaintiff's right.

*Brown v. Martin*, 176 N.C. 31, 33, 96 S.E. 642, 643 (1918) (citation omitted). *See also Carver v. Lykes*, 262 N.C. 345, 137 S.E. 2d 139 (1964).

[2] Defendants' first contention is that there was insufficient evidence of actual malice to warrant awarding punitive damages. We first consider the evidence relating to Gwynne. Plaintiff argues that actual malice on the part of Gwynne was demonstrated in two ways. First, he points to his testimony regarding interactions with Gwynne at a softball game a few weeks prior to plaintiff's arrest. Plaintiff testified that he collided with another player while sliding into home plate, and that

> Mr. Gwynne made a comment to me when he came in from the outfield that I certainly wouldn't do that to him. Later on in the game another incident happened on second base and Mr. Gwynne tried to accuse me of playing rough. He said that he wished it would have been him sliding in there, and that he could take care of me.

We find this testimony to be insufficient as a matter of law to support an award of punitive damages based on actual malice. The record contains no other evidence of personal animosity be-

tween Mr. Gwynne and plaintiff. This exchange of words between players at a competitive sporting event is simply inadequate, standing alone, to support a finding of actual malice.

Plaintiff also argues that evidence of Mr. Gwynne's conduct of the investigation supports a finding of actual malice on the part of Mr. Gwynne. This evidence is relevant to the issues of probable cause and legal malice, as well as to the question whether punitive damages may be supported on the basis of "reckless and wanton disregard of the plaintiff's right." This evidence bears no relation, however, to actual malice "in the sense of personal ill will" on the part of Mr. Gwynne.

We next turn to the question whether the evidence is sufficient to permit a finding under a theory of *respondeat superior* that McDonald's Corporation acted out of actual malice in instituting proceedings against the plaintiff. The law is clear that "[p]unitive damages may be awarded . . . from [sic] a corporation for a tort wantonly committed by its agents in the course of their employment." *Clemmons v. Insurance Co.,* 274 N.C. 416, 424, 163 S.E. 2d 761, 767 (1968) (citations omitted). In the present case, the jury found that Gwynne had committed a tort, and that he was acting in the course of his employment when he did so. We have concluded, however, that the evidence of Gwynne's actual malice is insufficient to permit imposition of punitive damages on that basis. It follows that McDonald's cannot be said to have acted out of actual malice based on the acts of Gwynne. While plaintiff argues that there were other employees of McDonald's who bore him ill will, we note that only Gwynne was found to have committed a tort. While a corporation may be liable for torts committed by its employees, punitive damages based on actual malice may not be predicated on the non-tortious acts of its employees.

[3] The defendants also contend that there was insufficient evidence that the prosecution was instituted "in a manner which showed the reckless and wanton disregard of the plaintiff's right," the second asserted ground for imposition of punitive damages. That the defendants instituted the prosecution without probable cause was established by the evidence to the satisfaction of the jury and has not been successfully contested on appeal. But plaintiff must show more than a lack of probable cause to be entitled to jury consideration of punitive damages. The evidence

must show "reckless and wanton disregard" of the rights of the plaintiff. We hold that there was insufficient evidence of such aggravated conduct to permit the jury to consider the issue of punitive damages. We note the undisputed evidence that Gwynne examined records that indicated large numbers of "no-sales," that he interviewed witnesses who claimed to have seen plaintiff take money from the register, and that he consulted with the police and with his superiors before instituting proceedings. Although sufficient to permit a finding that defendants acted without probable cause, the evidence was insufficient as a matter of law to establish reckless and wanton conduct on the part of the defendants.

The result is: in the trial for malicious prosecution and compensatory damages, we find no error; that portion of the judgment awarding plaintiff punitive damages must be vacated.

No error in part, vacated in part.

Judge HILL concurs in the result.

Judge WEBB dissents in part, concurs in part.

Judge HILL concurring in the result.

[1] I concur in the result. In my opinion there was insufficient evidence to support the award of punitive damages. While I believe it was error for the trial judge to instruct the jury not to consider the return of true bills of indictment as evidence of probable cause, nevertheless, I believe such instruction was harmless under the facts of this case.

Judge WEBB dissenting in part and concurring in part.

[1] I dissent because I believe it was error for the court to instruct the jury they could not consider the grand jury's return of true bills of indictment as evidence of probable cause. The cases cited by the majority hold that such evidence is admissible. The majority opinion distinguished these cases on the ground that the tort was complete when the indictments were returned. I believe this is a distinction without a difference.

Evidence that a grand jury has returned a true bill is some evidence that a reasonable man would have commenced a prosecution. I do not see why it makes a difference that the grand jury did not act until after the tort was complete.

I concur in the holding that there was not sufficient evidence to support an award of punitive damages.