RAY LIVINGSTON JONES v. MATT GWYNNE, CHRISTAL NEWTON, RAMONA GALARZA AND McDONALD'S CORPORATION

No. 531A83

(Filed 4 December 1984)

1. **Malicious Prosecution § 11.1— indictments after dismissal of warrants—no evidence of probable cause**

   In a malicious prosecution action based on warrants charging defendant with embezzlement, plaintiff showed that criminal proceedings based on the

Jones v. Gwynne

warrants were terminated in his favor when he showed that the prosecutor voluntarily dismissed the warrants, notwithstanding plaintiff was later indicted for embezzlement, since the return of the indictments for embezzlement did not constitute a continuation of the proceedings based upon the warrants but was the initiation of new proceedings against plaintiff. Therefore, the indictments were *prima facie* evidence of probable cause only in the proceedings initiated by the return of the indictments, and the trial court properly instructed the jury in the malicious prosecution action that the indictments could not be considered as evidence of probable cause in that action.

**2. Malicious Prosecution § 15— punitive damages—manner of investigation— wanton disregard of plaintiff's rights**

In a malicious prosecution action based upon charges against plaintiff for embezzlement from the fast-food restaurant which he managed, the evidence was sufficient to warrant submission of a punitive damages issue to the jury on the theory that the manner in which the investigation of the alleged embezzlement was conducted by the individual defendant, who was an employee of the corporate defendant, showed a reckless and wanton disregard of plaintiff's rights where it tended to show that the bulk of the incriminating evidence implicating plaintiff consisted of observations by two employees of him ringing up "no sales" while placing customers' money in the register; the individual defendant, a man with extensive training in criminal investigation, conducted only a superficial and cursory investigation to determine the truthfulness of statements by the employees or a plausible explanation of plaintiff's actions; the individual defendant failed to discover that time cards showed that one employee had worked on less than half the days she claimed to have seen plaintiff ring the "no sales" and failed to determine what impact the second employee's animosity toward plaintiff could have had on her decision to initiate the investigation of plaintiff; and no audit was conducted of the restaurant's records to determine whether there was a shortage of money at any time.

**3. Corporations § 27.2— malicious prosecution—liability of corporation for punitive damages**

Defendant corporation was liable under the doctrine of *respondeat superior* for punitive damages awarded to plaintiff for the tort of malicious prosecution committed by an employee of the corporation in the course of his employment.

**4. Corporations § 27— liability of corporation for torts of employee—statement in case disapproved**

A statement in *Jones v. Gwynne*, 64 N.C. App. 51, suggesting that a corporation may not be held liable for torts committed by its employees unless they are parties to the lawsuit or found by the jury to have committed a specific tort is disapproved.

APPEAL of right pursuant to G.S. 7A-30(2), by the defendants, Matt Gwynne and McDonald's Corporation, from the decision of a divided panel of the Court of Appeals, 64 N.C. App. 51, 306 S.E.

2d 574 (1983), which found no error in the trial for malicious pros-
ecution and the jury award of compensatory damages to the plain-
tiff. Plaintiff's petition for discretionary review pursuant to G.S.
7A-31 was allowed on 12 January 1984 for the purpose of review-
ing that portion of the decision vacating the award of punitive
damages to the plaintiff.

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague
and Dayle A. Flammia, and Smith, Dickey & Parish, by W. Ritch-
ie Smith, Jr., for the plaintiff-appellee and cross-appellant.*

*Hunton & Williams, by Odes L. Stroupe, Jr., and David
Dreifus, for defendant-appellants and cross-appellees.*

FRYE, Justice.

On defendants' appeal, the issue is whether the Court of Ap-
peals correctly found no error when the trial court instructed the
jury in a malicious prosecution action that subsequent indict-
ments by a grand jury could not be considered as evidence of
probable cause. On plaintiff's cross-appeal, we review that portion
of the Court of Appeals' decision which holds that the plaintiff's
evidence was insufficient to sustain a jury award of punitive
damages. On defendants' appeal, we affirm. On plaintiff's cross-
appeal we reverse the decision of the Court of Appeals and rein-
state the judgment of the trial court.

I.

This is a civil action for malicious prosecution. By complaint
filed 29 June 1979, the plaintiff, Ray Livingston Jones, alleged
that on and prior to 18 May 1979, he was employed by McDon-
ald's Corporation as manager of its business located at 3002
Raeford Road, Fayetteville, North Carolina; that the individual
defendants, Christal Newton and Ramona Galarza (cashiers at the
Raeford Road store), and Matt Gwynne, regional security officer,
were on that date acting as the employees, servants and agents of
the corporate defendant, McDonald's Corporation; that on or
about 18 May 1979, the individual defendants wilfully, wrongfully,
maliciously and without just and probable cause instituted, or
caused to be instituted, two criminal actions against plaintiff,
charging the plaintiff with embezzling from McDonald's Corpora-
tion the sum of $1.50 on or about 15 May 1979 and an "indeter-

minate amount" at some time prior to and after 13 April 1979; that such charges were false and untrue and known at the time by the defendants to be false and untrue; that said criminal charges were terminated in favor of the plaintiff on 26 June 1979, when the said charges were voluntarily dismissed by the district attorney; that the defendants acted without justification or probable cause and acted with actual malice towards the plaintiff, entitling the plaintiff to both compensatory and punitive damages; that by reason of the acts and conduct of the defendants, plaintiff was arrested and taken into custody, lost his job, opportunity of advancement and former good standing with McDonald's Corporation, was humiliated and caused great grief, embarrassment, etc.; compensatory damages of $200,000 and punitive damages of $100,000 were sought against all defendants, jointly and severally.

On 13 August 1979, while the present action was pending, the Cumberland County Grand Jury returned three true bills of indictment against Mr. Jones for embezzlement from the McDonald's restaurant.[1]

On 20 August 1979, defendants filed an answer in this malicious prosecution action, admitting residence of the parties and that the individual defendants were, on or about 18 May 1979, acting as the employees, servants and agents of McDonald's Corporation. The remaining allegations of the complaint were denied.

Plaintiff was tried on the criminal charges in February 1980. After hearing the State's evidence on the indictment for embezzling $1.51 from McDonald's, which was considered by the assistant district attorney to be his strongest case, the trial judge dismissed the case. Thereafter, the assistant district attorney took voluntary dismissals on the remaining charges.

The present malicious prosecution action was tried in January 1982. The trial court allowed Defendants Newton and Galarza's motions for a directed verdict at the end of the

---

1. The indictments charged Jones with embezzling from McDonald's:

79 CRS 36133—$122.13 on March 23, 1979;

79 CRS 36132—$1.51 on May 15, 1979;

79 CRS 35879—$68.95 on April 13, 1979.

N.C.]                    IN THE SUPREME COURT                    397

plaintiff's evidence but denied Defendants Gwynne and McDonald's Corporation's motions for a directed verdict.

The jury returned a verdict finding that defendants Matt Gwynne and McDonald's Corporation had "maliciously prosecute[d] criminal charges of embezzlement, issued on May 18 1979, against the Plaintiff, Ray Jones." The jury awarded plaintiff $200,000 for compensatory damages and $100,000 for punitive damages.

On appeal, a sharply divided panel of the Court of Appeals (one judge writing for the majority, one judge concurring in the result and one judge dissenting) found no error in the trial proceedings leading to the jury award of compensatory damages. However, the court unanimously voted to vacate the award of punitive damages because there was insufficient evidence adduced at trial to support such an award.

Other facts necessary for a determination of the issues raised on appeal will be incorporated in this opinion.

II.

[1] "An action in tort for malicious prosecution is based upon a defendant's malice in causing process to issue." *Middleton v. Myers*, 299 N.C. 42, 44, 261 S.E. 2d 108, 109 (1980). A plaintiff must prove four essential elements to establish a malicious prosecution claim against an accuser. He must prove "[1] that defendant initiated the earlier proceeding, [2] that he did so maliciously and [3] without probable cause, and [4] that the earlier proceeding terminated in plaintiff's favor." *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E. 2d 611 (1979).

In the instant case, defendants' appeal to this Court relates to an alleged error in the trial court's instruction to the jury on the question of probable cause. That instruction is as follows:

The question presented here is not one of the guilt or innocence of Ray Jones. Rather, it is the question of probable cause. Now, probable cause does not depend upon the guilt or innocence of the person accused but upon whether the Defendants had reasonable grounds for the suspicion supported by circumstances sufficiently strong in themselves to warrant cautious man to believe that the accused is guilty of the of-

fense. And I am referring to the events with which he is ultimately charged on the eighteenth day of May 1979. And in this case I refer specifically to the two felony embezzlement warrants issued by a magistrate on the eighteenth day of May 1979. This case is based upon those two warrants and not upon any bills of indictment which may have subsequently been returned by the Grand Jury. . . . And I instruct you that you may not consider the evidence of the return by the Grand Jury of the bills of indictment as true bills on this question because it occurred after the filing of this action. However, you may consider the finding of the bills of indictment and Ray Jones' acquittal there on the question of whether or not the proceedings commenced by the issuance of the warrants has actually terminated in favor of the Plaintiff.

The defendants argue in this Court, as they did in the Court of Appeals, that the above instruction is erroneous as a matter of law. Stated more specifically, the defendants contend that "the jury was erroneously instructed that it could not consider the grand jury indictments as evidence of probable cause."

In concluding that the trial court had not erred in giving the challenged instruction, Judge Hedrick, author of the majority opinion of the Court of Appeals, reasoned as follows:

While the general rules governing the admissibility of grand jury indictments in malicious prosecution cases are clear, it is true, as defendants concede in their memorandum of additional authority, that '[t]he factual situation in this case has never been ruled upon by a North Carolina appellate court.' In this case, the indictments defendants sought to introduce were issued after the present action for malicious prosecution was commenced. Plaintiff in the present case based his complaint not on the indictments, but rather on the arrest warrants issued months before. When the district attorney took a voluntary dismissal on the warrants, the criminal proceedings against Jones terminated for the purpose of this action, and the tort was complete. *Taylor v. Hodge*, 229 N.C. 558, 50 S.E. 2d 307 (1948); *Perry v. Hurdle*, 229 N.C. 216, 49 S.E. 2d 400 (1948). *See also* W. Prosser, Handbook of the Law of Torts Sec. 119, at 839 (4th ed. 1971).

While we could avoid deciding the question by agreeing with plaintiff that the challenged instruction, if error, was not prejudicial, we choose to be more definitive and declare that the better rule in such a case bars consideration of later indictments on the issue of probable cause. We note that the inquiry into probable cause seeks to establish whether there existed 'such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution.' *Pitts v. Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E. 2d 375, 379 (1978) (citation omitted). We do not believe that a grand jury determination of the existence of probable cause, issued after the alleged tort is complete and the complaint filed, is relevant to this inquiry. We thus hold that the trial judge did not err in giving the challenged instructions.

*Jones v. Gwynne*, 64 N.C. App. 51, 56, 306 S.E. 2d 574, 577 (1983). Judge Hill concurred in the result, stating that he believed that the trial judge erred by instructing the jury "not to consider the return of true bills of indictment as evidence of probable cause." However, he thought the instruction was "harmless under the facts of the case." *Gwynne*, 64 N.C. App. at 60, 306 S.E. 2d at 579-80 (Hill, J., concurring). Judge Webb, in a dissenting opinion, stated that he believed that the trial court had erred in instructing the jury not to consider the grand jury's return of true bills of indictment as evidence of probable cause. *Gwynne*, 64 N.C. App. at 60-61, 306 S.E. 2d at 580 (Webb, J., dissenting).

The defendants contend that the Court of Appeals' holding, that the challenged jury instructions were correct, was "based upon the erroneous assumption that the criminal proceedings against Jones terminated with the voluntary dismissal of the warrants on June 26, 1979." Defendants further contend that "[t]here can be no dispute that if the criminal proceedings against Jones did not terminate until February 1980 [the date on which the superior court dismissed the charges against plaintiff based on the indictments], the jury should have been instructed to consider the indictments as evidence of probable cause." We hold that the criminal proceedings terminated in plaintiff's favor on 26 June 1979, the date on which the assistant district attorney took a voluntary dismissal on the warrants.

This Court has previously held that a plaintiff in a malicious prosecution case has shown a favorable termination of a criminal proceeding when he shows that the prosecutor voluntarily dismissed the charges against him. *Pitts v. Pizza, Inc.*, 296 N.C. 81, 249 S.E. 2d 375 (1978); *Taylor v. Hodge*, 229 N.C. 558, 50 S.E. 2d 307 (1948). *See also* Prosser and Keeton on the Law of Torts, § 119, at 874-75 (5th ed. 1984). Therefore, once the plaintiff presented evidence in this case that the assistant district attorney had voluntarily dismissed the embezzlement charges against him, he had shown a termination of the criminal proceedings favorable to him.

In *Marcus v. Bernstein*, 117 N.C. 31, 23 S.E. 38 (1895), this Court stated the following concerning the requirement that plaintiff show a termination of the prior prosecution:

> The essential thing is that the prosecution on which the action for damages is based should have come to an end. How it came to an end is not important to the party injured, for whether it ended in a verdict in his favor, or was quashed, or a *nol. pros.* was entered, he has been disgraced, imprisoned and put to expense, and the difference in the cases is one of degree, affecting the amount of recovery.

*Id.* at 33, 23 S.E. at 39.

Ordinarily the termination of the proceeding must result in a discharge of the plaintiff so that new process must issue in order to revive the proceeding against him. *See Brinkley v. Knight*, 163 N.C. 194, 79 S.E. 260 (1913).

The issuance of a new process in order to revive the proceedings against the plaintiff is exactly what occurred in the instant case. After the assistant district attorney had voluntarily dismissed the embezzlement charges based upon warrants issued against the plaintiff, it was necessary for the district attorney to resort to a new process in order to revive the charges. Specifically, he had to and did seek the return of true bills of indictment from the grand jury. This evidence affirmatively shows that the criminal proceedings based upon the warrants had terminated.

Defendants argue that the assistant district attorney indicated his intention to seek grand jury indictments (which he subsequently did) at the time he voluntarily dismissed the

embezzlement charges against the plaintiff.[2] Since these true bills of indictment were returned against the plaintiff, then the criminal proceedings against plaintiff did not terminate "until a verdict was directed in his favor [during his trial for embezzlement in February 1980]."

It is defendants' position that the subsequent attempt and actual procurement of true bills of indictment after warrants for embezzlement have been voluntarily dismissed effectively prevents a plaintiff from showing a termination of criminal proceedings in his favor, sufficient to support a malicious prosecution action. We disagree.

Without attempting to set out the majority and minority rules concerning when there has been a termination favorable to the plaintiff in a malicious prosecution action, we note that the California Supreme Court discussed the necessity of a "final termination" at great length in *Jaffe v. Stone*, 18 Cal. 2d 146, 114 P. 2d 335 (1941). In *Jaffe*, the California Supreme Court stated:

> In stating the requirement of termination, courts often say that the proceeding must be 'finally' terminated. Such a statement is entirely accurate if the ordinary reasonable meaning of the words is taken. The *proceeding* must be finally terminated; that is, the particular criminal proceeding commencing, for example, by complaint and arrest, must have passed through some such stage as preliminary hearing and dismissal, or trial and acquittal or abandonment by the prosecuting authorities. When this has occurred, *that proceeding is finally terminated*. If the termination was such as not to constitute a bar to a new prosecution, the accused may be charged and tried again for the same offense; but this will be a *new proceeding*, with a new court number, new pleadings, new judge and jury, and a new judgment. (Emphases in original.)
>
> . . . .
>
> Mistaken emphasis is placed upon the idea of 'final' rather than 'favorable' termination; and the *offense* is confused with

2. The argument is based on the assistant district attorney's notation "Vol Diss to go to GJ," which appeared on the warrant shucks.

the *proceeding*. When we look at the problem in the light of the background of the tort and the purpose of the requirement of favorable termination, we perceive that freedom of the accused from new prosecutions is not involved in all cases. Such freedom may be assured by an acquittal at the trial, or by some other termination at the trial to which jeopardy attaches. But where the proceeding is dismissed by a magistrate, there is no jeopardy, and no bar to a new prosecution until the statute of limitations runs on the offense. In the case of the usual felony, this is three years in California (citation omitted), but in a few instances (murder, embezzlement of public money, falsification of public records) there is no limitation and the prosecution is *never barred*. Consider, then, the effect of this doctrine upon the rights of a plaintiff who is wrongfully and maliciously accused of a felony, arrested and brought before a magistrate, and is discharged because no case against him is made. He must ordinarily wait three years before he may sue for malicious prosecution. In some instances, he must wait longer; and in others it would seem that he cannot sue at all because the statute of limitations does not run on the offense. There is no rational basis for this result, nor any justification for it in policy.

*Id.* at 152-55, 114 P. 2d at 339-40. (Emphases in original.)

The present law of North Carolina as stated in *Bernstein, Brinkley,* and *Taylor* is in accord with the above quoted language of *Jaffe*. Those cases collectively stand for the proposition that a plaintiff has proven a termination in his favor in a malicious prosecution action when he shows that the prosecutor has voluntarily dismissed the charges against him thereby having to resort to the institution of new proceedings in order to further prosecute the case. Accordingly, the assistant district attorney's voluntary dismissal of the charges against the plaintiff in the instant case terminated that prosecution. Plaintiff's later indictment by a grand jury did not constitute a continuation of the proceedings based upon the warrants but instead was the initiation of new proceedings against the plaintiff. That being so, it is clear that the criminal proceedings terminated in plaintiff's favor on 26 June 1979.

Defendants further argue that even if the criminal proceedings against the plaintiff terminated on 26 June 1979, the

jury still should have been allowed to consider the subsequently returned true bills of indictment on the question of probable cause. They contend that since grand jury bills of indictment are *prima facie* evidence of probable cause, the trial court erred in instructing the jury not to consider the indictments on the issue of probable cause. We disagree.

We are not prepared to hold that a grand jury indictment, returned after a criminal proceeding initiated by the issuance of a warrant has been voluntarily dismissed, is *prima facie* evidence of probable cause in a malicious prosecution action based upon the criminal proceedings initiated by the warrant. As previously stated herein, the criminal proceedings upon which plaintiff based his present malicious prosecution action were terminated in plaintiff's favor on 26 June 1979. At that time, the alleged tort was complete. Thus, the grand jury indictments, which were returned on 13 August 1979, had no bearing on, and were largely irrelevant to, the question of whether, on 18 May 1979, there existed "such facts and circumstances, known to [the defendants] at the time, as would induce a reasonable man to commence a prosecution." *Pitts v. Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E. 2d 375, 379 (1978). In short, the indictments in the instant case were only *prima facie* evidence of probable cause in the proceedings which were initiated by the return of the grand jury indictments. Since plaintiff's present malicious prosecution action was based upon the arrest warrants and their subsequent dismissal, the grand jury indictments were not *prima facie* evidence of probable cause in this case. This assignment of error is rejected.

### III.

[2] We next address the issue of whether the jury award of punitive damages to the plaintiff is supported by the evidence adduced at trial. The jury returned a verdict finding that Matt Gwynne and McDonald's Corporation maliciously prosecuted the plaintiff, Ray Jones, and assessed punitive damages in the amount of $100,000 against Mr. Gwynne and McDonald's Corporation. The trial court entered judgment accordingly. Plaintiff cross-assigns as error that portion of the Court of Appeals' opinion which vacates the portion of the judgment awarding punitive damages to the plaintiff because the evidence was insufficient as a matter of law to support such an award. Plaintiff contends as follows on this issue:

[Plaintiff] alleged and presented evidence of actual malice and a sense of personal ill will toward the [plaintiff] on the part of [defendant] McDonald's agents within the scope of their employment. [Plaintiff's] evidence also raised the issue that the tort was done under circumstances of insult and rudeness and in a manner which showed a reckless and wanton disregard or an indifference for plaintiff's rights. Under either or both showings the [plaintiff] was entitled as the Court ruled, to allow questions of fact to be presented to the jury for its determination.

We agree with the contentions of the plaintiff.

On appeal to the Court of Appeals, defendants contended that their motion for judgment notwithstanding the verdict regarding the issue of punitive damages was improperly denied by the trial court. The Court of Appeals held that plaintiff's evidence was insufficient as a matter of law to support a finding of "actual malice" in the sense of personal ill will on the part of Mr. Gwynne. The Court of Appeals also held that the evidence was insufficient as a matter of law to support a finding under the theory of *respondeat superior* that McDonald's Corporation acted out of actual malice in instituting the criminal proceedings against the plaintiff. The Court of Appeals stated:

We next turn to the question whether the evidence is sufficient to permit a finding under a theory of *respondeat superior* that McDonald's Corporation acted out of actual malice in instituting proceedings against the plaintiff. The law is clear that '[p]unitive damages may be awarded . . . from [sic] a corporation for a tort wantonly committed by its agents in the course of their employment.' *Clemmons v. Insurance Co.*, 274 N.C. 416, 424, 163 S.E. 2d 761, 767 (1968) (citations omitted). In the present case, the jury found that Gwynne had committed a tort, and that he was acting in the course of his employment when he did so. We have concluded, however, that the evidence of Gwynne's actual malice is insufficient to permit imposition of punitive damages on that basis. It follows that McDonald's cannot be said to have acted out of actual malice based on the acts of Gwynne.

*Id.* at 59, 306 S.E. 2d at 579.

The Court of Appeals also concluded that the evidence was insufficient to show that the prior criminal proceedings were instituted in a manner which established "reckless and wanton conduct on the part of the defendants." *Id.* at 60, 306 S.E. 2d at 579.

Before punitive damages may be awarded to the plaintiff, the jury must find that the defendant committed an actionable legal wrong against the plaintiff or his property and it must award the plaintiff either compensatory or nominal damages. *Clemmons v. Life Ins. Co.*, 274 N.C. 416, 163 S.E. 2d 761 (1968); *Parris v. Fischer & Co.*, 221 N.C. 110, 19 S.E. 2d 128 (1942). Since we have upheld the jury award of compensatory damages to the plaintiff, we are only concerned here with the sufficiency of the plaintiff's evidence to support the submission of the issue of punitive damages to the jury. G.S. 1A-1, Rule 50; *Meacham v. Board of Education*, 59 N.C. App. 381, 297 S.E. 2d 192 (1982), *cert. denied*, 307 N.C. 577, 299 S.E. 2d 651 (1983). In order for a plaintiff to recover punitive damages in a malicious prosecution action, he must "offer evidence tending to prove that the wrongful action of instituting the prosecution 'was done for actual malice in the sense of personal ill-will, or under circumstances of insult, rudeness or oppression, or in a manner which showed the reckless and wanton disregard of the plaintiff's right.'" *Brown v. Martin*, 176 N.C. 31, 33, 96 S.E. 642, 643 (1918) (quoting *Stanford v. Grocery Co.*, 143 N.C. 419, 428 (1906) ).

We agree with the Court of Appeals' conclusion that there was insufficient evidence to justify submission of the issue of punitive damages to the jury based on the "actual malice" of Mr. Gwynne, in the sense of personal ill will. However, the following evidence, viewed in the light most favorable to the plaintiff, was sufficient to justify submission of the issue of punitive damages to the jury based on the fact that the investigation by Mr. Gwynne, which precipitated the prosecution of the plaintiff, was conducted "in a manner which showed the reckless and wanton disregard of the plaintiff's rights."

Mr. Gwynne was the Field Security Manager for McDonald's Corporation covering the Raleigh region and the Greenville, South Carolina region. He conducted the investigation concerning the plaintiff's alleged embezzlement of money from McDonald's,

and he directly participated in the final decision to bring charges against the plaintiff. As Field Security Manager, Mr. Gwynne was responsible for the security of McDonald's assets and he also made security presentations to all McDonald's employees.

In 1970, prior to beginning work with McDonald's, Mr. Gwynne was a Special Agent with the North Carolina State Bureau of Investigation. He conducted criminal investigations in a three-county area. After leaving the employment of the SBI, Mr. Gwynne worked for the district attorney's office for the Ninth Judicial District as an Administrative Assistant and Investigator. In 1974, Mr. Gwynne worked for the Sheriff's Department of Nash County as the Chief Deputy in charge of the Administration and Investigative Division. In 1977 Mr. Gwynne was hired by McDonald's Corporation in his present capacity. This evidence certainly indicates that Mr. Gwynne possessed the necessary background and expertise in investigatory work to enable him to conduct a thorough and proper investigation of Mr. Jones.

Ramona Galarza testified that in March she saw the plaintiff ring numerous consecutive "no sales" and put the money in the register. However, time cards showed that Ms. Galarza had worked on less than half the days she claimed to have seen Mr. Jones ring the "no sales." As a part of Mr. Gwynne's investigation, he reviewed the daily store records, the register journal tapes, the managers' schedules, the crew schedules, and the employee time cards for March, April, and May 1979. In reviewing the time cards, Mr. Gwynne made no notations of when Ms. Galarza worked; nor were these cards available at trial. Mr. Gwynne testified that he did not know where the time cards could be located. Ms. Galarza's absences, if noted by Mr. Gwynne, could have cast serious doubts on her alleged "observations" of plaintiff's activities.

Additionally, Ms. Galarza stated to Mr. Gwynne that on one occasion she saw plaintiff take money from beneath the cash register drawer, put it into his pocket, and then leave the store. However, no evidence was adduced at trial that the McDonald's restaurant showed a shortage of money for any day or that any McDonald's money was ever missing from that store. In investigating this allegation, Mr. Gwynne never performed an audit of the McDonald's managed by plaintiff nor did he order that an

audit of the store's records be performed. Furthermore, plaintiff's evidence tended to show that his food-cost ratio, which is the relationship the cost of food bears to the gross income, was second best of six McDonald's restaurants in the city of Fayetteville and normally second best in the entire Raleigh market.

Shelia Stewart, second assistant to the plaintiff, also testified that she had seen Mr. Jones ring up "no sales." Ms. Stewart contacted Paul Craddock, the Fayetteville Area Supervisor for McDonald's, in mid-May 1979 to report the "no sales." Mr. Craddock then informed Mr. Gwynne on 15 May 1979 that Ray Jones was suspected of embezzling money from the McDonald's restaurant that he managed.

There was plenary evidence, however, that Shelia Stewart wanted to be store manager and intensely disliked Jones. Two fellow employees interviewed by Mr. Gwynne testified that Ms. Stewart had threatened to "get" the plaintiff "if it's the last thing I do." Mr. Gwynne, who had interviewed the morning shift employees, should have discovered and determined during his investigation what impact Ms. Stewart's animosity toward Mr. Jones could have had on her decision to initiate the investigation of Mr. Jones.

Mr. Gwynne testified that he had interviewed all the people on Mr. Jones' staff. However, Hazel Bido and Pam Lawson testified that he had never interviewed them. These two witnesses had first-hand knowledge that was favorable to Mr. Jones. No statement was taken from Bea Howell who was interviewed by Mr. Gwynne. This witness also made exculpatory statements regarding Mr. Jones.

Two other morning shift employees, Christal Newton and Stephanie Williams, had seen Mr. Jones ring a "no sales" once in three months. Ms. Williams admitted this could have been proper. Written statements were obtained by Mr. Gwynne from these two witnesses. Henrietta Purcell testified that she never saw Mr. Jones ring a "no sales." She further testified that she, Ramona Galarza, and Hazel Bido often played with the cash registers and rang up "no sales." In fact, a person standing at the register, not waiting on customers, could punch sixty consecutive "no sales" into the register in less than thirty seconds. Mr. Gwynne, being familiar with McDonald's restaurants and their operation, was

aware of this fact which would tend to mitigate suspicions about Mr. Jones' "no sales."

Mr. Gwynne apparently failed to present the foregoing exculpatory evidence to the police, when he obtained assistance from the Fayetteville Police Department on 16 May 1979. On 18 May 1979, at the request of Mr. Gwynne, two detectives went to the restaurant and observed Mr. Jones for forty minutes but saw nothing unusual. Nevertheless, after reporting Mr. Jones' benign activities to Mr. Gwynne and Mr. Craddock, all four men returned to the store and handcuffed Mr. Jones in front of his employees and customers. Thereafter, he was taken to the Law Enforcement Center where he was questioned for several hours.

While Ray Jones was being questioned, Mr. Gwynne talked to two of his superiors about the case, J. D. Bell, Operations Manager, and Rick DeSota, National Security Director for McDonald's. Then he talked to Detectives Post and Kraus and told them that he thought that they had enough evidence to charge Ray Jones with embezzlement. At the suggestion of Mr. Gwynne, Detective Post called Assistant District Attorney Michael Winesette and informed him of the facts of the case, in an attempt to determine its possible merits. Mr. Winesette informed Detective Post that it sounded like a good case but "if he could get more information as to the actual conversion of the money . . . it certainly would be better." After Mr. Craddock had talked to Mr. Bell and the detectives, Detective Post swore out two warrants against the plaintiff charging him with the embezzlement of money from McDonald's.

In summary, the bulk of the incriminating evidence implicating Mr. Jones consisted primarily of two witnesses' observations of him ringing "no sales" while placing customers' money in the register. As the above evidence indicates, Mr. Gwynne, a man with extensive training in criminal investigation, conducted a superficial and cursory investigation to determine the truthfulness of these statements or a plausible explanation of Mr. Jones' actions. We believe that this evidence, when viewed in the light most favorable to the plaintiff, is sufficient to warrant submission of the punitive damages issue to the jury on the question of whether the manner in which the investigation was conducted by Mr. Gwynne showed a "reckless and wanton disregard of the

plaintiff's rights." The jury determined that the evidence adduced at trial proved to its satisfaction that Mr. Gwynne conducted an investigation that showed a "reckless and wanton disregard of the plaintiff's rights." Consequently, this Court must reverse the Court of Appeals' decision that vacates the portion of the superior court judgment awarding plaintiff punitive damages.

[3]   We also note that at all times relevant to the facts of this case, Mr. Gwynne was an employee of the McDonald's Corporation. The investigation that was conducted by Mr. Gwynne was done in the course of his employment and it was within the scope of his authority. "The general rule is well established that a corporation is liable for the torts and wrongful acts or omissions of its agents or employees acting within the scope of their authority or the course of their employment." *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 205, 130 S.E. 2d 281, 285 (1963). Based on the theory of *respondeat superior*, it has been held that punitive damages may be awarded against a corporation for a tort wilfully, wantonly and maliciously committed by an employee in the course of his employment. *Clemmons v. Insurance Co.*, 274 N.C. 416, 163 S.E. 2d 761 (1968). Therefore, based upon the theory of *respondeat superior*, we hold that McDonald's Corporation is also liable for the punitive damages awarded to the plaintiff. Based upon all of the foregoing, Matt Gwynne and McDonald's Corporation are jointly and severally liable to the plaintiff for the compensatory and punitive damages awarded by the jury.

[4]   Plaintiff additionally contends that there was sufficient evidence of actual malice and personal ill will that was exhibited toward the plaintiff by other McDonald's employees acting within the scope of their employment which also supports the submission to the jury of the punitive damages issue against McDonald's. Regarding this issue, the Court of Appeals stated:

> While plaintiff argues that there were other employees of McDonald's who bore him ill will, we note that only Gwynne was found to have committed a tort. While a corporation may be liable for torts committed by its employees, punitive damages based on actual malice may not be predicated on the non-tortious acts of its employees.

*Jones v. Gwynne*, 64 N.C. App. 51, 59, 306 S.E. 2d 574, 579 (1983).

We agree that a corporation may be held liable for torts committed by its employees; however, we disagree with the above statement to the extent that it suggests that a corporation may not be held liable for torts committed by its employees, unless they are parties to the lawsuit or found by the jury to have committed a specific tort. However, we find it unnecessary to consider the evidence concerning the other employees' actions, since the evidence of Mr. Gwynne's "reckless and wanton" investigation was sufficient to warrant the submission of the punitive damages issue against McDonald's to the jury.

In summary, we affirm the conclusion reached in the Court of Appeals' opinion that no error occurred in the proceedings leading to the jury award of compensatory damages to the plaintiff. However, we reverse that portion of the Court of Appeals' opinion which vacated the judgment of the trial court to the extent that it awarded the plaintiff punitive damages. Therefore, the opinion of the Court of Appeals is affirmed in part and reversed in part. This case is remanded to the Court of Appeals for further remand to the Superior Court, Cumberland County, for reinstatement of the judgment entered by the trial court.

Affirmed in part; reversed in part.