864 F.2d 28
 Jackman S. VODREY: Evelyn S. Vodrey, individually,
Plaintiffs-Appellees,
v.
Carolista Fletcher GOLDEN, and husband, Leonard Glenn
Golden, Defendants-Appellants.
Jackman S. VODREY, Trustee for Evelyn S. Vodrey Trust, and;
Jackman S. Vodrey, individually, Plaintiffs-Appellees,
v.
Carolista Fletcher GOLDEN, and husband; Leonard Glenn
Golden, Defendants-Appellants.
 Nos. 87-2214, 88-2042.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 4, 1988.
Decided Dec. 21, 1988.
 
 W. Mark Spence and Betsy Butler, Aycock, Spence & Graham, Nags Head, N.C. for defendants-appellants.
 John G. Trimpi and C. Everett Thompson, II, Trimpi, Thompson & Nash, Elizabeth City, N.C., for plaintiffs-appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WINTER, Chief Circuit Judge, and MURNAGHAN, Circuit Judge.
 
 POWELL, Associate Justice:
 
 1
 Appellants in this diversity case from North Carolina challenge the sufficiency of the evidence supporting a jury verdict finding them liable for the tort of abuse of process. We must also consider whether the district court abused its discretion in imposing a discovery sanction against appellants. We think the evidence supported the abuse of process verdict, and also think the sanction was within the district court's discretion. We therefore affirm.
 
 I.
 
 2
 Appellee Jackman S. Vodrey, a resident of Ohio, was trustee for the Evelyn Vodrey Trust, which owned property in Nags Head, North Carolina. In July 1984, Vodrey became concerned about a sign that he believed was located on the property. The sign carried an advertisement for a neighboring jewelry shop. Vodrey feared that continued acquiescence in the location of the sign might lead to loss of the property through adverse possession. Vodrey called the sign's owners, appellants Carolista and Leonard Golden, asking them to acknowledge that their sign was on Vodrey property. Vodrey proposed that the Goldens "lease" the property for one dollar a month. The Goldens refused.
 
 
 3
 In July 1985, Vodrey went to the property with a Mr. Jones. Mr. Golden cursed Vodrey, and threatened him with arrest if he did not leave. Early that afternoon, Mrs. Golden went to a magistrate in Manteo and swore out warrants charging Vodrey and Jones with criminal trespass. Later in the afternoon, Vodrey returned to the property to take pictures of the sign and relevant boundary markings. That evening, a deputy arrived at Vodrey's vacation home. The deputy arrested Vodrey in the presence of his wife and daughter, and took him to the police station. Trial was set for July 12, and on that date Vodrey was served with another criminal trespass warrant based on his presence on the property when he took the photographs.
 
 
 4
 The state voluntarily dismissed the charges against both Jones and Vodrey. Vodrey subsequently filed this civil action in the Eastern District of North Carolina on December 6, 1985, alleging malicious prosecution and seeking to quiet title to the property. The Goldens filed an answer and discovery began. On June 18, 1986, during a recess in Mrs. Golden's deposition, she caused a second set of criminal trespass warrants to be issued. The warrants were based on the same alleged trespass in July 1985 as the first set of warrants issued almost a year earlier. On July 11, 1986, the Goldens moved the district court to stay Vodrey's malicious prosecution suit pending the disposition of the new trespass charges. The Goldens argued that Vodrey's suit for damages could not go forward before disposition of the second set of criminal trespass charges. Further, they contended that should Vodrey be convicted on the charges in the second set of warrants, probable cause would be established, and Vodrey's claim of malicious prosecution based on the earlier warrants would fail.[1] The district court denied the stay motion, and held on the basis of Jones v. Gwynne, 312 N.C. 393, 323 S.E.2d 9 (1984), that the disposition of the second set of trespass charges was not material to Vodrey's suit.
 
 
 5
 On April 7, 1987, after a trial in Dare County District Court, Vodrey was found not guilty of criminal trespass. Vodrey then amended his complaint in federal court to allege two additional counts of malicious prosecution and two counts of abuse of process. (App. 60) The Goldens generally denied the allegations in the supplement to Vodrey's complaint and moved for dismissal of the abuse of process claims under Fed.R.Civ.P. 12(b)(6). The Goldens contended that the supplemental complaint had failed to allege the second element of an abuse of process claim, a willful act committed after issuance of the process in order to gain advantage in some collateral matter. The district court denied the motion, holding that this element was satisfied by the following allegation in the complaint:
 
 
 6
 Defendants have perverted the use of process by filing criminal charges against the plaintiff, Jackman S. Vodrey, to terminate or delay the Federal proceedings, the issuance of said criminal warrants being entirely collateral to this action but designed to gain advantage to defendants.
 
 
 7
 (App. 73-74).
 
 
 8
 Prior to trial, the Goldens stipulated that the sign had been on Vodrey property all along. The case was tried to a jury in October 1987. The Goldens moved for a directed verdict at the close of Vodrey's evidence and at the close of all the evidence. These motions were denied. The jury found Mrs. Golden, but not Mr. Golden, liable for malicious prosecution as to the July 8 and July 12, 1985 warrants. It found both Goldens liable for malicious prosecution as to the June 18, 1986 warrants. Finally, the jury found both Goldens liable for abuse of process as to the June 18, 1986 warrants. The district court denied the Goldens' motion for judgment notwithstanding the verdict. In this appeal, the Goldens challenge only the abuse of process verdicts, on which the jury awarded a total of $36,000 in compensatory and punitive damages.
 
 II.
 
 9
 Abuse of process is "the misuse of legal process for an ulterior purpose" or the "perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is [intended] to be secured." E.g., Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979) (citing cases). North Carolina cases describe abuse of process as consisting of two elements, an "ulterior motive" and an "act." E.g., Id. at 201, 254 S.E.2d at 624. The ulterior motive requirement is satisfied where the prior action was initiated "to achieve a collateral purpose not within the normal scope of the process used." Id. The act requirement is satisfied where the defendant "committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." Id.
 
 
 10
 Appellants' actions in this case included the use of legal process in a manner and for a purpose that clearly was an abuse. As the Goldens themselves testified, the second set of warrants was not issued for any purpose that trespass proceedings are intended to achieve. Rather, appellants procured the issuance of the warrants in response to Vodrey's action for malicious prosecution. (Rec.Vol. V, p. 286). The Goldens hoped that by causing a successful prosecution on the second set of warrants, they could establish "probable cause" for the first set of warrants, and thus defeat Vodrey's suit against them.[2] (Rec.Vol. VI, p. 539). Appellants do not deny that they attempted to use the criminal proceedings for their own purposes. Rather, they base their challenge to the verdict on the formal definition of abuse of process. Admitting their ulterior motives, appellants challenge only the sufficiency of the evidence to support the jury's finding of an "act."[3]
 
 
 11
 We think that evidence sufficient to support the jury's finding is present at several places in the record.[4] The Goldens actively participated in the trespass prosecution that followed the issuance of the second set of warrants. They conferred with the district attorney prosecuting Vodrey, and Mr. Golden voluntarily testified at the criminal trespass trial. (App. 162). The prosecuting attorney testified that the Goldens' attorney told him of the pending civil suit, encouraged him to press the criminal prosecution, and "indicated it was important to have the criminal offenses or alleged criminal offenses tried." (App. 165). The record also discloses that appellants procured the second set of warrants when Vodrey traveled from Ohio to Nags Head for Mrs. Golden's deposition. (Rec. Vol. IV, pp. 112, 191). From this the jury could infer that appellants made use of the warrants for the collateral purpose of discouraging Vodrey's discovery effort.[5] We think all of these instances were acts by which appellants attempted to use for their own personal ends a criminal process they initiated by filing the second set of warrants.
 
 
 12
 Appellants, however, argue that "acts" such as these cannot suffice. They point to language from several North Carolina cases to the effect that abuse of process requires an act "not proper in the regular prosecution of the proceeding." E.g., Stanback, 297 N.C. at 201, 254 S.E.2d at 624; Barnette v. Woody, 242 N.C. 424, 88 S.E.2d 223 (1955); Ellis v. Wellons, 224 N.C. 269, 29 S.E.2d 884 (1944); see also Fox v. Barrett, 90 N.C.App. 135, 367 S.E.2d 412 (1988). Appellants contend that they did nothing improper or irregular in the course of the second trespass proceedings, and that the "act" requirement therefore could not have been met. They emphasize that the district attorney who tried the trespass charges testified that in his opinion the Goldens took no improper actions during the prosecution. (App. 162).
 
 
 13
 We think appellants' argument misapprehends the nature of the tort. The action for abuse of process is aimed not at insuring the regularity of legal proceedings, but at preventing use of legal process for collateral purposes. This distinguishes it from malicious prosecution. In actions for abuse of process it is "immaterial that the process used was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them."[6] Restatement (Second) of Torts Sec. 682, comment a (1977). Abuse of process occurs where "the process has been used to accomplish some end which is without the regular purview of the process." E.g., Finance Corp. v. Lane, 221 N.C. 189, 196, 19 S.E.2d 849, 853 (1942); Petrou v. Hale, 43 N.C.App. 655, 659, 260 S.E.2d 130, 133 (1979).
 
 
 14
 On its facts this case is somewhat unusual. But the principles are clear. In the paradigm case, there may be an "act" entirely separate from any legal proceedings. For example, where a defendant has criminal warrants issued against plaintiff, then makes a separate offer to have the warrants dismissed in return for payment of an unrelated debt, abuse of process has occurred. See Ellis, 224 N.C. at 272, 29 S.E.2d at 885. Here, however, Vodrey's suit for malicious prosecution was in progress before the issuance of the second set of warrants. The collateral advantage the Goldens thought they could achieve--defeat of Vodrey's cause of action for malicious prosecution--would therefore have followed from prosecution of the trespass warrants alone. No further acts were needed. Where the acts taken in the initial proceeding suffice to achieve the illicit collateral effect, North Carolina courts have found abuse of process. See Hewes v. Wolfe, 74 N.C.App. 610, 330 S.E.2d 16 (1985).
 
 
 15
 None of the cases relied upon by appellants addresses the situation of parallel litigation presented here. We are therefore unpersuaded by appellants' reliance on language from cases decided on dissimilar facts. As one commentator has observed with respect to abuse of process, "the details that help explain one case should not become the loopholes that make an absurdity of the next." Harper, James & Gray, The Law of Torts 499 (2d ed. 1986). Appellants purposely subverted the criminal justice system in an attempt to frustrate Vodrey's civil suit. This is exactly the evil at which the tort of abuse of process is aimed.III.
 
 
 16
 Appellants also challenge a discovery sanction imposed by the district court. The district court awarded Vodrey his fees and costs incurred in connection with a motion to compel discovery. This motion was necessitated by Mrs. Golden's refusal to cooperate in her deposition. Appellants object to several items in the affidavit of fees and costs filed by Vodrey's attorney, claiming that the costs were not related to the motion to compel and that the supporting affidavit was too vague.
 
 
 17
 The district court's discretion with respect to discovery matters is broad. E.g., Ardrey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir.1986). The district court in this case reviewed the same objections to appellee's claim for fees that are before us on appeal. The court nonetheless specifically found that appellee's counsel had "expended at least fifteen hours in connection with the motion to compel discovery." (App. 58). Given the appropriate standard of review, we are not prepared to disturb this finding.
 
 IV.
 
 18
 The district court's judgment awarding damages for abuse of process is hereby
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Malicious prosecution is a tort closely related to abuse of process. To establish malicious prosecution, a plaintiff must prove that (i) defendant initiated the earlier proceedings (ii) with malice and (iii) without probable cause, and that (iv) the prior proceeding terminated in the plaintiff's favor. See Jones v. Gwynne, 312 N.C. 393, 323 S.E.2d 9 (1984)
 
 
 [2]
 Appellants apparently did not know that under the rule of Jones v. Gwynne, supra, the reissuance of the warrants could have no effect on the malicious prosecution action that was already underway
 
 
 [3]
 In this case there is no question that the jurors' verdict represented their finding that an act was shown. The district court specifically instructed the jury that it must find an act committed after the issuance of the second set of warrants on June 18, 1986 before it could impose liability for abuse of process. (Rec.Vol. VII, p. 185). The jury in fact returned for clarification concerning the "time frame" of the act requirement after retiring for deliberations. The district court again stated that the jury must find an act committed after the second set of warrants issued. (Rec.Vol. VIII, p. 200)
 
 
 [4]
 We review appellants' challenge under the familiar standard of review applicable to the verdict of a properly instructed jury. The jury's verdict must stand if, taking the evidence in the light most favorable to the plaintiff, there was "any substantial evidence" to support it. E.g., Evington v. Forbes, 742 F.2d 834, 835 (4th Cir.1984)
 
 
 [5]
 As noted above, on July 11, 1986 the Goldens filed a motion to stay Vodrey's civil suit pending the outcome of the criminal case initiated by their filing of the second set of warrants. The purpose clearly was to obtain a collateral advantage. This motion was a subsequent act. But it does not appear that Vodrey placed evidence of the stay motion before the jury. We therefore do not rely on it in support of our decision
 
 
 [6]
 Of course, none of this was true of the Goldens' criminal trespass warrants. As the malicious prosecution verdicts showed, the criminal trespass action was commenced without probable cause, with malice, and it terminated in Vodrey's favor. See supra note 1. We doubt whether actions taken in the course of a malicious prosecution could qualify as "proper in the regular course of the proceeding."