**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES E. MONROE; VINCENT MONROE,
Plaintiffs-Appellants,

and

GWENDOLYN GRAY,
Plaintiff,

v.

HARRY E. SHAFFER; MELVIN R.

BISHOP; MICHAEL FARRUGGIO;
WILLIAM M. DUNCAN; J. DEKOVEN
BOWEN; CITY OF CHARLOTTESVILLE;
THE CHARLOTTESVILLE POLICE
DEPARTMENT; UNKNOWN POLICE
OFFICERS OF THE CHARLOTTESVILLE
POLICE DEPARTMENT,
Defendants-Appellees.

No. 95-1041

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-92-63-C)

Submitted: May 28, 1996

Decided: June 17, 1996

Before WIDENER, HALL, and MURNAGHAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Margaret M. Cain, Charlottesville, Virginia, for Appellants. Kimber-
ley A. Whittle, George H. Gilliam, GILLIAM, SCOTT & KRONER,
P.C., Charlottesville, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Vincent Monroe and James Monroe appeal from the district court's
orders adopting the magistrate judge's recommendation to grant sum-
mary judgment to the Defendants on several claims and denying their
motion to set aside the jury verdict in favor of the Defendants on the
remaining claims. We have previously granted the Appellees' motion
to submit on briefs and now affirm.

Vincent Monroe and James Monroe filed separate actions against
police officers Harry E. Shaffer, Melvin R. Bishop, Michael Farrug-
gio, William M. Duncan, Chief of Police J. DeKoven Bowen, the
"Unknown Police Officers of the Charlottesville Police Department,"
the Charlottesville Police Department, and the City of Charlottesville
under 42 U.S.C. § 1983 (1988) alleging constitutional and state law
violations.

The actions were consolidated and relate to events that occurred in
an area of Charlottesville known to be a high crime area. A neighbor-
hood watch had been instituted in the area which involved increased
police activity. Officer Shaffer noted a group of male teenagers in a
park, adjacent to the neighborhood in question, and heard what he
believed to be gunshots. Upon Shaffer's notice, all the teenagers ran
off toward Oak Ridge Gardens, an apartment complex. Shaffer
radioed Farruggio for assistance and they met at the apartment com-

2

plex where they encountered a group of teenagers they believed were the same ones spotted at the park. The officers along with security personnel from the apartment complex approached the teenagers and began questioning some of them, including Carl Harris.

At some point, Harris's uncle, Vincent Monroe, arrived on the scene. The parties dispute the facts of the events after Vincent Monroe's arrival. Defendants claim that Vincent Monroe grabbed Harris by the arm to lead him away, refused to cooperate with the officers' investigation, and did not identify himself. The Plaintiffs claim that Vincent Monroe joined in the questioning of his nephew and once satisfied with his answers directed Harris to leave the scene. Subsequently, Harris and Vincent Monroe proceeded away from the officers. Before they could reach their destination, Shaffer and Farruggio intercepted them and again asked Vincent Monroe to identity himself.

According to Vincent Monroe, a crowd began to gather, the officers' inquiry became more hostile, and he was eventually ordered to leave the scene. He refused. By that time, James Monroe and Gwendolyn Gray were on the scene.

Defendants, however, claim that when questioned about his name and address, Vincent Monroe cursed and offered no other response. The officers also contend that Vincent Monroe verbally threatened them using physical gestures. The officers advised him that he was under arrest for disorderly conduct and attempted to take him into custody.

Both parties agree that a struggle ensued between the officers and the two Monroes. Vincent Monroe and James Monroe were taken into custody. Vincent Monroe and James Monroe claim that they were beaten by the police officers as they were taken into custody. They also claim that the officers refused their requests for medical attention while they were detained.

Vincent Monroe and James Monroe were convicted of state law offenses. On appeal, an order of nolle prosequi was entered as to all charges against them. Subsequently, Vincent Monroe and James Monroe each filed a § 1983 complaint. The complaints were consoli-

dated and all the Defendants in each action filed a motion for summary judgment. The consolidated action was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) (1988).

The district court adopted the magistrate judge's recommendation to grant summary judgment to all Defendants on Plaintiffs' Eighth and Fifth Amendment claims, federal and state law claims alleging false arrests, and federal and state law claims alleging discrimination. The court adopted the recommendation to dismiss all claims against the "Unknown Police Officers of the Charlottesville Police Department," to grant summary judgment to Chief Bowen on all federal and state law claims, and to grant summary judgment to the City of Charlottesville and the Charlottesville Police Department on all federal claims. Finally, the court adopted the recommendation to deny summary judgment to Defendants Shaffer, Bishop, Farruggio, and Duncan on all state and federal claims by Vincent Monroe and James Monroe alleging the use of excessive force and the denial of medical attention. The court also adopted the recommendation to deny summary judgment to the City of Charlottesville and the Charlottesville Police Department on all claims relating to the use of excessive force under the state law doctrine of respondeat superior.

After a jury trial, judgment was entered in favor of the Defendants on the remaining claims. The jury determined that the officers did not use excessive force to arrest Vincent Monroe or James Monroe, they were not deliberately indifferent to Vincent Monroe's or James Monroe's medical needs after their arrest, and the City of Charlottesville was not liable for the excessive force claims against the police officers as the employer of these officers under principles of respondeat superior. The district court denied the Plaintiffs' motion to set aside the verdict and grant a new trial.

On appeal, Vincent Monroe and James Monroe claim that the district court erred by granting summary judgment to the Defendants on the false arrest claims, the district court erred by denying their motion to set aside the jury verdict, the Defendants were not entitled to qualified immunity, and the Defendants failed to protect them.

I.

This court reviews a grant of summary judgment de novo. Farewell v. Un, 902 F.2d 282, 287 (4th Cir. 1990). Appellants claim that the

4

district court erred by granting summary judgment to the Defendants on the false arrest claims because the officers lacked probable cause to arrest them. See Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974).

Under Virginia law, a conviction for the offense charged, even though subsequently reversed, dismissed, or vacated, is conclusive evidence of probable cause. Cramer v. Crutchfield, 648 F.2d 943, 946 (4th Cir.1981); See Kane v. Hargis, 987 F.2d 1005, 1008 (4th Cir. 1993).

Because Vincent Monroe and James Monroe were convicted of state law offenses, it is conclusively established that the officers had probable cause to arrest them. Id. Furthermore, it is immaterial that on appeal an order of nolle prosequi was entered as to all charges against them. Id.

II.

This court may reverse a jury verdict only when there is a complete absence of probative facts to support the conclusions reached by the jury. Sherrill White Constr., Inc. v. South Carolina Nat'l Bank, 713 F.2d 1047, 1050 (4th Cir. 1983). The verdict must stand if, taking the evidence in the light most favorable to the defendant, there is "any substantial evidence" to support it. See Vodrey v. Golden, 864 F.2d 28, 30 n.4 (4th Cir. 1988). "Substantial evidence" is such evidence as a reasonable mind might accept as adequate to support the conclusion even if different conclusions also might be supported by the evidence. Gibraltar Sav. v. LDBrinkman Corp., 860 F.2d 1275, 1297 (5th Cir. 1988), cert. denied, 490 U.S. 1091 (1989).

Appellants challenge the jury verdict entered in favor of the Defendant police officers on the claim that the officers used excessive force when arresting them. To determine whether a particular use of force to effect an arrest is excessive, courts apply an"objective reasonableness" test. Graham v. Connor, 490 U.S. 386, 397 (1989). Among the key factors in deciding the objective reasonableness of the officers' actions is whether the suspect actively resisted arrest. Id. at 396.

The officers testified at trial that Vincent Monroe and James Monroe were belligerent towards the officers and resisted arrest. Further-

5

more, the jury's verdict in favor of the Defendants involved a credibility determination. Such a determination is not subject to review by this court. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Therefore, we find that substantial evidence exists to support the jury's verdict and we will not disturb it. Vodrey, 864 F.2d at 30.

Appellants also claim that Chief Bowen, the City of Charlottesville, and the Charlottesville Police Department provided inadequate training and supervision of the officers. They claim that the lack of training and supervision resulted in the use of excessive force.

To establish municipal liability, Appellants must establish that their alleged injuries were caused by a specific policy or custom of the City of Charlottesville. Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). Further, the doctrine of respondeat superior is generally inapplicable to§ 1983 suits. Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).

The jury found that the City of Charlottesville was not liable for the excessive force claims against the officers as the employer of these officers under principles of respondeat superior. This finding was based on a credibility determination that should not be disturbed. Saunders, 886 F.2d at 60. In any event, the City of Charlottesville cannot be liable for unproven constitutional violations. As discussed above, Appellants failed to prove that the officers used excessive force during their arrest. Therefore, we will not disturb the jury's verdict on this claim. Vodrey, 864 F.2d at 30.

In addition, the district court properly granted summary judgment to the City of Charlottesville and the Charlottesville Police Department on all federal claims because these Defendants are not persons within the meaning of § 1983. The district court also properly granted summary judgment to Chief Bowen because there is no evidence in the record that he was aware of a pervasive, unreasonable risk of harm and failed to take corrective action which resulted in the events giving rise to this action. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, 470 U.S. 1035 (1985).

Appellants next claim that the Defendants were deliberately indifferent to their medical needs by refusing to provide them medical

6

attention for their alleged injuries after their arrest. See Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984). As arrestees, Appellants' deliberate indifference claims are subject to the standards of Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. Id.

The jury found that Vincent Monroe and James Monroe were not denied medical care for alleged injuries received during their arrest. The officers testified that neither Vincent Monroe nor James Monroe showed any visible signs of serious injury on the night in question. They further testified that the jail was notified that Vincent Monroe and James Monroe requested medical attention. Their testimony is more than sufficient to establish that they were not deliberately indifferent to Vincent Monroe's and James Monroe's medical needs. Vodrey, 864 F.2d at 30. Further, the jury's decision was based on a credibility determination and should not be disturbed. Saunders, 886 F.2d at 60.

III.

Appellants contend that the Defendants were not entitled to qualified immunity and the issue of qualified immunity was a question for the jury. Appellants' allegation is meritless because the district court denied qualified immunity, accepting the magistrate judge's recommendation that summary judgment on this ground should be denied. Also, because the jury found that the officers did not use excessive force when arresting Vincent Monroe and James Monroe, the question of qualified immunity did not need to be resolved. Because there was no excessive force, the Defendants' immunity or lack thereof was irrelevant.

Finally, Appellants claim that the Defendant officers failed to protect them from the alleged use of excessive force. However, the jury found that the officers did not use excessive force. Furthermore, the officers did not have a general duty to protect them. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989).

7

Accordingly, we affirm the district court's orders granting summary judgment to the Defendants and denying Appellants' motion to set aside the jury verdict in favor of the Defendants.

AFFIRMED

8