State of NORTH CAROLINA ex rel. Richard HAILEY, Jr., Plaintiff,

v.

Sgt. Douglas E. WESTMORELAND Deputy Sheriff, individually and in his official capacity; A. Porter, Deputy Sheriff, individually and in his official capacity; Gerald K. Hege, Sheriff of Davidson County, in his official capacity; Old Republic Surety Company, Surety; and Davidson County, Defendants.

No. 1:02 CV 00326.

United States District Court, M.D. North Carolina.

June 18, 2003.

Romallus O. Murphy, Greensboro, NC, for Plaintiff.

Scott C. Hart, Sumrell Sugg Carmichael Hicks & Hart, PA, New Bern, NC, William L. Hill, Moss Mason & Hill, Greensboro, NC, for Defendants.

## ORDER OF UNITED STATES MAGISTRATE JUDGE

ELIASON, United States Magistrate Judge.

This case now comes before the Court on a motion for summary judgment made by defendants Anthony Porter, Gerald Hege, Old Republic Surety Company, and Davidson County. That motion has been fully briefed by the parties and is now ready for decision.

## I. Facts

The facts in this case, as stated in the light most favorable to plaintiff, are as follows. On August 2, 2001, around 6:00 P.M., plaintiff and a passenger named Dramius Geter left a truck stop located near I–85 in Lexington, North Carolina. Their reason for being at the truck stop is somewhat disputed in this case. Defendants claim that they were there for a drug buy. Plaintiff seems to agree with this in his complaint and in his answers to defendants' interrogatories. However, in his deposition, he denied the drug activity and claimed that they went to the truck stop to get something to eat. In any event, as plaintiff and Geter left the truck stop, Davidson County narcotics officers contacted defendant Porter and asked him to stop the pair for a drug violation.

Porter responded to his fellow officers' request by pulling in behind plaintiff's vehicle, a white Ford Explorer, in his unmarked police car and activating his blue lights and siren. Plaintiff did not stop immediately, but instead ran a stop sign and drove onto the interstate. As Porter followed with a dash-mounted video camera recording the events, plaintiff drove for about two miles before he was forced off the road by another law enforcement vehicle driven by defendant Westmoreland. During the drive, plaintiff's speed was fairly constant at just over 60 miles-per-hour. Also, Porter states that he saw a small white object being thrown from the driver's side window.

The events that are central to plaintiff's claims against defendants took place after he was forced off the road. Plaintiff and Geter both state that when their vehicle came to a stop, they placed their hands out of the side windows. Geter claims that unidentified officers approached his side of the vehicle, struck him once, removed him from the vehicle, placed him on the

ground, and handcuffed him in a rough manner. Consequently, he did not see what happened to plaintiff.

Plaintiff claims that defendant Westmoreland approached the vehicle first with his weapon drawn. He states that Westmoreland grabbed one of his arms and pulled it down, while placing his weapon on the top of plaintiff's vehicle above the driver's seat. Porter then arrived and grabbed plaintiff's other arm. This account of events appears roughly consistent with the videotape from Porter's in-car camera, which was still recording.

Plaintiff alleges that once both of his arms were grabbed by Westmoreland and Porter, Westmoreland reached into the vehicle and struck him in the head and face. Then, as Porter held plaintiff's arm, Westmoreland ran around to the passenger side of the vehicle, entered it, struck him two more times, and twisted one of plaintiff's arms to the point that his elbow was injured. The video does not clearly answer the question of whether Westmoreland struck plaintiff or not. While it does show Westmoreland's arms in the plaintiff's vehicle and does show him run around the front of the vehicle to enter it from the passenger side, it does not show what he was doing when his arms were inside or after he entered it. In any event, shortly after Westmoreland entered the vehicle, plaintiff was taken from the vehicle, handcuffed, and arrested. He was eventually charged with assaulting Porter and Westmoreland and with possession of cocaine. These charges were later dropped due to the "unavailability of witnesses."[1]

Plaintiff claims that as a result of Porter and Westmoreland's actions, he suffered swollen lips, as well as contusions on his forehead and elbow. He also claims un-specified amounts of damages for mental and physical anguish and medical expenses.

## II. Plaintiff's Claims

Based on the facts set out above, plaintiff raises two claims for relief against defendants. First, he alleges that Porter and Westmoreland violated his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and his statutory rights under 42 U.S.C. § 1983 by using excessive force to effect his arrest. He also contends that defendants Gerald Hege and Davidson County are indirectly liable based on their failure to properly control and supervise Porter and Westmoreland. Defendant Old Republic Surety Company, in turn, is potentially liable as the surety on Hege's sheriff's bond.

Plaintiff also raises a second cause of action. This appears to be a state law claim for malicious prosecution. Plaintiff alleges that Porter and Westmoreland maliciously and corruptly brought criminal proceedings against him without probable cause. This claim is asserted against Porter and Westmoreland in both their individual and official capacities as deputy sheriffs. Defendants, with the exception of Westmoreland, have moved for summary judgment as to all of plaintiff's claims against them.

## III. Legal Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

---

1. The circumstances surrounding Porter's unavailability are unclear. However, Westmoreland was in federal custody at the time that plaintiff's charges were dropped. Westmoreland is currently serving a lengthy federal prison sentence.

tled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* The mere fact that both parties request summary judgment does not necessarily mean that the material facts are undisputed. *World–Wide Rights Ltd. Partnership v. Combe Inc.*, 955 F.2d 242, 244 (4th Cir.1992). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence,* that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479 (4th Cir.1989).

Where plaintiff's claims arise under state law, special rules apply. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the federal court should it be convinced the highest court would rule to the contrary. *Sanderson v. Rice*, 777 F.2d 902, 903 (4th Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. *Burris Chemical, Inc. v. USX Corp.*, 10 F.3d 243 (4th Cir. 1993).

## IV.  Discussion

As a preliminary matter, it must be noted that there appears to be some confusion in the case over the exact nature of plaintiff's claims. In their brief, the moving defendants treat plaintiff's complaint as raising a false arrest claim under federal law and state law claims based on the North Carolina Constitution. Although there is some language in plaintiff's complaint to support this view, the Court does not read the complaint to raise such claims. (The briefing of the issues was likely an act of caution on the part of counsel.) In any event, if plaintiff ever intended to raise such claims, he has now abandoned them. Plaintiff explicitly states on page 10 of his response brief that claims not briefed are abandoned. He did not brief either a federal false arrest claim or any claim based on the North Carolina Constitution. Therefore, the claims are abandoned and the Court need not address them further.

In addition to abandoning any possible federal false arrest and North Carolina Constitution claims, plaintiff also abandons some claims that he clearly did raise. Specifically, he makes no argument in his brief that Hege, Davidson County, and Old Republic are still liable for any violation of 42 U.S.C. § 1983. He also does not contend that Davidson County is liable for the malicious prosecution claim raised under state law. The Court commends plaintiff's effort to narrow the scope of his claims in light of the evidence in the record and defendants' arguments in their brief.

As a result of plaintiff's concessions, his only remaining claims are federal law excessive force claims against Porter and Westmoreland and state law malicious prosecution claims against Porter, Westmoreland, Hege, and Old Republic. No claims remain against Davidson County and it will be dismissed as a defendant. The claims that do remain will now be addressed to the extent that defendants challenge them in their motion for summary judgment.

### A. § 1983 Excessive Force Claim Against Porter

In order to prevail on his excessive force claim, plaintiff must eventually prove that the force used by Porter was not objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). The use of force must be judged from the perspective of a reasonable officer on the scene. *Id.* Determining whether excessive force was used "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Also, while the plaintiff need not show an injury to establish excessive force, he must show that the force used was more than *de minimis*. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). That is because not every shove or push amounts to constitutional harm. *Id.*

In evaluating plaintiff's excessive force claim against Porter, the Court must also consider whether Porter is entitled to qualified immunity. This is because government officials (including police officers), when performing duties within the scope of their employment, are immune from suit unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiff's rights are evaluated according to the circumstances present at the time of the incident in question. *Anderson v. Creighton*, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–3040, 97 L.Ed.2d 523 (1987). The Fourth Circuit has noted that with Fourth Amendment cases, it is difficult to discern whether a particular combination of actions violates a plaintiff's rights because that area of the law develops incrementally and constantly continues to develop. *Tarantino v. Baker*, 825 F.2d 772, 775 (4th Cir.1987). If there is a legitimate question as to whether Porter's actions objectively violated plaintiff's rights, Porter is entitled to qualified immunity. *Id.*

Here, plaintiff has made no real claim that Porter himself used excessive force. The only force allegedly used by Porter is that he held plaintiff's hand or wrist before, during, and after the assault by Westmoreland. Plaintiff does not claim that Porter used any weapon against him, struck him, or otherwise injured him. Plaintiff has also produced no evidence that Porter purposely held him so that Westmoreland could beat him. In fact, this notion is dispelled by the videotape from Porter's police car. As noted earlier, the video does not clearly show whether Westmoreland struck plaintiff or not. Still, whatever Westmoreland did or did not do, it happened very quickly and was over in a few seconds. Porter simply held onto one of plaintiff's arms and is not shown communicating with or cooperating with Westmoreland to harm plaintiff. Finally, plaintiff claims no injury from any actions taken by Porter. In the end, plaintiff has not produced any evidence showing that the force used by Porter was objec-

tively unreasonable so as to be excessive or even that more than *de minimis* force was used by Porter. Any direct claim of excessive force fails as to Porter.

■ Plaintiff appears to recognize the dearth of evidence supporting a direct claim against Porter. Consequently, he focuses his argument on whether Porter should be held liable for Westmoreland's actions on the basis of bystander liability. A police officer who is a bystander to another officer's unconstitutional actions may himself be held liable under 42 U.S.C. § 1983 "if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County, Maryland,* 302 F.3d 188, 204 (4th Cir.2002). Unfortunately for plaintiff, both the facts and the law prevent him from prevailing by using this theory.

Assuming for the purposes of deciding this motion that Westmoreland did strike plaintiff and that Porter knew this, the Court finds that Porter did not have a reasonable opportunity to prevent the harm. Plaintiff alleges that Westmoreland struck him at two separate times during his arrest incident. The first occurred as the officers held plaintiff's hands outside his vehicle. As shown by the videotape from the camera in Porter's car, any striking, if it occurred at all, occurred without warning and was very brief in nature. Too brief, in fact, for Porter to have reacted and stopped Westmoreland. The second alleged assault by Westmoreland occurred after he was in the car with plaintiff. Plaintiff has presented no evidence that Porter would have known that Westmoreland's motive in entering the car

was to assault plaintiff again, rather than help in removing him from the car. Also, plaintiff was between Porter and Westmoreland at that point and the second striking incident, if it occurred, was extremely brief. Plaintiff claims in his affidavit that Westmoreland struck him only two times when inside the car. (Pl.Aff., ¶ 4) There is once again no evidence that Porter could have prevented it. To do so, he would have had to reach into the vehicle and around plaintiff to restrain Westmoreland. This would have been nearly, or perhaps entirely, impossible given the physical situation and brevity of the time Porter had to react.

Other facts in the case also weigh against plaintiff's theory of bystander liability. First, to have physically restrained Westmoreland, Porter would have had to let go of plaintiff. At the time, plaintiff was a drug suspect who had just refused to surrender when signaled to stop by Porter's blue lights and siren. Not only that, but the events were taking place very near the travel lanes of a busy interstate highway. Any prolonged struggle or further chase would have endangered both officers and the traveling public. Also, Westmoreland's gun was lying unprotected on top of plaintiff's vehicle. Given the surrounding circumstances, it cannot even be seriously argued that it would have been reasonable for Porter to have let go of plaintiff in order to restrain Westmoreland.[2]

Plaintiff also states that Porter did verbally intervene to restrain Westmoreland. Plaintiff asserts in his affidavit that after Westmoreland struck him inside the vehicle, he grabbed plaintiff's arm and twisted until it popped. At this point, plaintiff

---

**2.** It should also be noted that plaintiff's claimed injuries are fairly slight. Even if plaintiff's allegations are believed, this is not a situation where Porter would have been forced to choose between restraining Westmoreland or seeing plaintiff suffer serious injury or death.

allegedly cried "my arm, my arm" and Porter responded with "no Doug, no." (*Id.*) This apparently caused Westmoreland to release plaintiff so that he could be removed from the vehicle. Thus, in the one alleged situation where Porter could perhaps reasonably intervene, plaintiff claims that he did so. Overall, plaintiff's evidence shows that Porter had no reasonable opportunity to act to prevent any of the alleged striking by Westmoreland and that he successfully acted to prevent further arm twisting. Plaintiff simply cannot establish the basic elements of his bystander liability claim.

■ In addition, the bystander liability established by *Randall* was not decided by the Fourth Circuit until 2002, while the alleged assault on plaintiff occurred in 2001. The Fourth Circuit specifically noted in *Randall* that up until that time the Circuit had not "definitively assessed the circumstances under which bystander liability might attach to a law officer." *Randall* at 204. The unsettled state of legal precedent, combined with the facts as stated above, leads to the inescapable conclusion that Porter did not violate any clearly established right of plaintiff's of which a reasonable person would have been aware. Therefore, he is entitled to qualified immunity. Overall, Porter did not use excessive force against plaintiff, had no reasonable opportunity to prevent Westmoreland's alleged striking of plaintiff, and bystander liability was not a clearly established legal principle at the time. For all of these reasons, his motion for summary judgment as to plaintiff's excessive force claim is granted.

## B. State Law Malicious Prosecution Claim Against Porter

Plaintiff's other claim for relief against Porter is that he was maliciously subjected to a criminal prosecution on the charge of assaulting Porter. As stated earlier, plaintiff pursues this claim only under state, as opposed to federal, law. Also, he makes it clear in his brief opposing summary judgment that his claim against Porter is based only on the charge that he assaulted Porter, and not on the charge of possession of cocaine.

■ In order to establish a malicious prosecution claim under state law, plaintiff must produce evidence that: (1) Porter initiated a proceeding against him, (2) Porter acted with malice, either actual or implied, (3) there was a lack of probable cause for such initiation, and (4) the proceeding was terminated in plaintiff's favor. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 12 (1984). Here, Porter does not dispute plaintiff's ability to establish the first, second, or fourth elements of his claim. Instead, he attempts to argue that probable cause existed and that plaintiff cannot show otherwise.

■ Porter's argument regarding probable cause is somewhat confusing because plaintiff had not yet narrowed his claims. Thus, Porter mistakenly perceives plaintiff as raising a federal wrongful arrest claim by plaintiff. As to that claim, Porter contends that there was probable cause to arrest plaintiff for some charges, i.e. drug possession and failure to stop for a blue light and sirens, and that this precluded plaintiff from basing a false arrest claim on any charges for which probable cause was lacking. Essentially, he claims that because plaintiff was arrested on some charges for which probable cause existed, he would have been arrested in any event, and cannot now complain just because probable cause did not exist for one of the other charges. However, plaintiff is not bringing a false arrest claim. Moreover, Porter fails to argue his case for the existence of probable cause on the assaulting an officer charge. Instead, Porter merely

makes the conclusory statement that probable cause existed "for the same reasons set out in connection with Plaintiff's federal claim for wrongful arrest." (Deft. Brf. at 13) This does not show probable cause for the assault on an officer. It merely shows plaintiff would have been arrested in any event.

Porter has not provided any direct evidence, not even a statement in his affidavit, that probable cause existed to allow him to bring a charge of assaulting an officer against plaintiff.[3] In contrast, plaintiff stated in his deposition that he never struck the arresting officers. (Pl. Dep., at 39–40) This statement by plaintiff is enough to raise a question as to whether probable cause existed for the charge that he assaulted Porter and to allow plaintiff to proceed beyond summary judgment.

In addition to arguing that plaintiff cannot establish probable cause, Porter also makes a two other arguments in favor of summary judgment. First, Porter claims that North Carolina law requires that, in addition to the four elements discussed above, a plaintiff must show special damages such as an arrest or seizure that would not occur in similar cases. For this proposition, he quotes *Alexander v. Alexander*, 152 N.C.App. 169, 171, 567 S.E.2d 211, 213 (2002). He contends that plaintiff cannot show such special damages. He also argues that because some of the charges against plaintiff were supported by probable cause and so would have caused his arrest anyway, the fact that he was arrested cannot support a damages claim and plaintiff can show no other damages.

Both of Porter's additional arguments fail. The rule set out in *Alexander* quite clearly applies only when the prosecution complained of by a plaintiff was a civil, as opposed to criminal, prosecution. *Id.* The prosecution complained of by plaintiff in the present case was criminal in nature, so *Alexander's* special damages requirement does not apply here. As for damages, defendant cites no legal authority, North Carolina or otherwise, showing that there can be no recovery under North Carolina law in the situation presented by this case. Under North Carolina law, damages may be recovered for the disgrace, imprisonment, and expenses resulting from the prosecution. *Jones v. Gwynne*, 312 N.C. 393, 400, 323 S.E.2d 9, 13 (1984). The damages can either be nominal or compensatory. *Id.* at 312 N.C. at 405, 323 S.E.2d at 16. It may well be that the additional disgrace and/or expense for being arrested on one defective charge out of several is minimal. Yet, defendant has not shown the Court that plaintiff could not be entitled to even nominal damages under North Carolina law. Therefore, Porter is not entitled to summary judgment at this time on plaintiff's malicious prosecution claim and his motion for summary judgment is denied as to that claim.

### Sheriff Hege and Old Republic

Plaintiff does not seek to hold Sheriff Hege and Old Republic Surety Company liable for any federal claims. However, he does contend that the Sheriff is liable for the actions of his deputies, Porter and Westmoreland, as far as his

---

**3.** It is true that a state magistrate and a state grand jury did find probable cause to arrest and prosecute plaintiff for assaulting Porter. This may be evidence of probable cause. *See Jones v. Gwynne*, 312 N.C. 393, 403, 323 S.E.2d 9, 15 (1984). However, perhaps these findings were based on statements and testi-

mony by Porter. Porter has not shown that he would be entitled to summary judgment under North Carolina law if his statements supporting probable cause in the state courts were false. This issue simply was not addressed and the Court hesitates to do so *sua sponte*.

malicious prosecution claims are concerned.[4] Hege's reply to this is that only Porter and Westmoreland are named in the portion of the complaint dealing with the malicious prosecution claim. While this is true, Hege ignores the fact that the claim is brought against them in both their individual and their official capacities. Because plaintiff alleges that the deputies were acting in their official capacities as deputy sheriffs when they maliciously prosecuted him, they were acting as the alter ego of their employer, Sheriff Hege, and he is a proper party to the action. *State ex rel. Cain v. Corbett,* 235 N.C. 33, 38–39, 69 S.E.2d 20, 23–24 (1952). Furthermore, as the surety on his bond, Old Republic is also a proper, and even a necessary, party to the case. *Id.* For these reasons, Sheriff Hege and Old Republic are not entitled to summary judgment on the malicious prosecution claim and their motion is denied as to this claim. Instead, Hege must remain in the case, but only in his capacity as the representative of the office of Sheriff of Davidson County and Old Republic must remain as his surety.

**IT IS THEREFORE ORDERED** that Anthony Porter, Gerald Hege, Davidson County, and Old Republic Surety Company's motion for summary judgment (docket no. 17) be, and the same hereby is, denied in part and granted in part as is set out in the body of this order. Only plaintiff's federal excessive force claim against Douglas Westmoreland and his state law malicious prosecution claims against Porter, Westmoreland, Hege in his official capacity as Sheriff, and Old Republic will proceed to trial.

---

4. Although the malicious prosecution claim was discussed above only as to Porter, the same reasoning would apply as to the claim against Westmoreland given that it is based on a charge that plaintiff assaulted Westmoreland.